Robert J. Lowe, Milwaukee, Wis., for plaintiff.

Bruce A. Olson, Asst. Atty. Gen., Madison, Wis., for defendant.

## ORDER

TERENCE T. EVANS, District Judge.

This rather interesting case demonstrates the complexity and quirkiness of eleventh amendment jurisprudence. The state of Wisconsin, it seems, has clearly violated a federal law, yet the eleventh amendment—as interpreted by the Supreme Court—prohibits me from granting relief to this plaintiff. Another plaintiff making a related claim might overcome the eleventh amendment obstacle in federal court; Beatrice Ziemer, the plaintiff here, might have avoided an eleventh amendment problem if she had sued earlier; but all is not lost as she can probably obtain in state court the relief she seeks here. So much for complexity and quirkiness!

## FACTS

The facts are undisputed. On March 29, 1987, Beatrice Ziemer's husband, Richard, died in the line of duty as a firefighter in Glendale, Wisconsin. Mrs. Ziemer and her two children received a $50,000 benefit from the federal government under the Public Safety Officers' Benefits Act, 42 U.S.C. §§ 3796–3796c.

Mrs. Ziemer also applied for benefits under the Wisconsin Worker's Compensation Act. On August 5, 1987, an administrative law judge in the state Department of In-

**Beatrice M. ZIEMER, Plaintiff,**

v.

**STATE OF WISCONSIN, DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant.**

**Civ. A. No. 88–C–321.**

United States District Court, E.D. Wisconsin.

Aug. 30, 1988.

dustry, Labor and Human Relations (DILHR) ruled on her claim. The judge found that Mrs. Ziemer was entitled to a special death benefit, in addition to the primary benefit of $101,400, because Richard was a firefighter. Dependents of deceased firefighters (and similar public servants) are eligible for a special benefit under § 102.475, Wis.Stat. Using the statutory formula, the judge calculated the special benefit to be $76,050 and then reduced that amount by the $50,000 which Beatrice Ziemer had obtained from the federal government. Thus, the judge ordered DILHR to pay Mrs. Ziemer $26,050 for the special benefit.

The state administrative law judge reduced Mrs. Ziemer's special benefit pursuant to § 102.475(1)(b), Wis.Stat., which provides:

> The department [DILHR] shall reduce the amount of the special death benefit required to be paid under par. (a) by the amount received upon submittal of a claim under 42 USC 3796 to 3796c.

This provision would seem to conflict with 42 U.S.C. § 3796(e), which provides that the federal benefit "shall be in addition to any other benefit that may be due from any other source," with two exceptions not relevant here. Believing the provision to be invalid, Mrs. Ziemer filed this lawsuit seeking an award of damages from the state of Wisconsin under the supremacy clause.

■ Wisconsin moved to dismiss the case, arguing that a federal court is precluded from ordering a state to pay retrospective monetary relief by the eleventh amendment and the holding in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). On May 19, 1988, Mrs. Ziemer filed an amended complaint, this time asking "[t]o have plaintiff's rights declared as they may exist." In other words, she is now seeking a declaratory judgment that § 102.475(1)(b), Wis.Stat., is unconstitutional. Wisconsin has again moved to dismiss, contending that it is immune to such declaratory relief under the eleventh amendment and that it did not waive its immunity.

## DISCUSSION

The eleventh amendment, which has remained unchanged since its adoption in 1798, provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

On its face, the amendment bars federal courts from hearing suits brought by citizens of one state against another state. But the Supreme Court has long held that the amendment also prohibits citizens from bringing suit against their own states in federal court. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Four justices of the modern Supreme Court have pressed vigorously for the *Hans* rule to be abandoned, but the majority has held fast. *See, e.g., Welch v. State Dept. of Highways and Public Transportation*, —— U.S. ——, 107 S.Ct. 2941, 2958, 97 L.Ed.2d 389 (1987) (Brennan, J., dissenting); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting). If the *Hans* rule were the only one I had to apply, Mrs. Ziemer's complaint would automatically be dismissed.

There is, however, the so-called fiction of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That case permits federal courts to hear suits against state *officials* who are alleged to violate federal law—the fiction being that a claim against a state officer is not a claim against the state itself because an officer acting illegally is not acting in behalf of the state. *Ex Parte Young* might have permitted the plaintiff in this case to circumvent the *Hans* rule, except that Mrs. Ziemer sued a state agency and not a state official. And *Hans* immunity protects state agencies along with the states proper. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). It does not matter that Mrs. Ziemer dropped her request for monetary damages: "This jurisdictional bar [when a state agency is named as defend-

ant] applies regardless of the nature of the relief sought." *Id.*

Thus, I must dismiss the complaint because Ziemer sued DILHR and not the head of DILHR. *Ex Parte Young* may be a fiction, but it imposes real-life formalities on litigants.

■ Dismissal for this reason is hardly a satisfying resolution, though, because Mrs. Ziemer can easily remedy the faulty caption on her complaint. Assuming I were to dismiss without prejudice, she simply would refile and name DILHR's chief as the defendant; Wisconsin would again move to dismiss, given the broad eleventh amendment position argued in its briefs. To save the time and energy that would be expended in such a charade, I will address the jurisdictional merits by pretending that Mrs. Ziemer's amended complaint actually names the head of DILHR. Even with this indulgence, the complaint must be dismissed.

It is true that Mrs. Ziemer's amended complaint does not violate the rule barring a federal suit for back damages from the state. *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Nonetheless, Ziemer's reliance on *Edelman* is misplaced, for that case represented a narrowing of the *Ex Parte Young* exception to the *Hans* rule. *Edelman* did not affirmatively authorize all prospective relief. In fact, the Court held that "equitable relief may be barred by the Eleventh Amendment." *Id.* at 667.

*Green v. Mansour,* not *Edelman,* controls the instant dispute. In *Green,* the Supreme Court reviewed the circumstances in which declaratory judgments conflict or comport with the eleventh amendment. 474 U.S. 64, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). During the pendency of the action in *Green,* Congress favorably amended the AFDC provisions to which the plaintiffs objected. Although the substantive issues were mooted, the plaintiffs asked for declaratory relief—specifically, a declaration that the prior conduct of the director of the Michigan Department of Social Services had violated federal law.[1] The Court ruled that declaratory judgment would be inappropriate because there was no claimed continuing violation of federal law. *Id.* at 428. The Court reasoned that a declaratory judgment would serve a purpose only if it were later offered in state proceedings as res judicata on the issue of liability. "But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." *Id.* Conversely, if the plaintiffs in *Green* did not intend to use the declaratory judgment in later state proceedings, the judgment would "serve no purpose whatever in resolving the remaining dispute between the parties, and is unavailable for that reason." *Id.* n. 2 (citation omitted).

Mrs. Ziemer, like the plaintiffs in *Green,* makes no claim of a continuing violation of federal law. I do not know if DILHR still offsets benefits under § 102.475(1)(b), Wis. Stat., and in any event, I cannot see how its present policy would affect Mrs. Ziemer one way or another. If I were to grant a declaratory judgment that the head of DILHR once violated federal law, that judgment would either have no purpose or, if enforcement of the judgment in state court is sought, it would effect an end run around the eleventh amendment. Therefore, I will grant Wisconsin's motion to dismiss.[2]

What is ironic is that Mrs. Ziemer might have survived a motion to dismiss if she had sued before Wisconsin reduced her spe-

1. The plaintiffs also asked for "notice relief," *i.e.,* having the state notify individuals who were wrongfully denied AFDC benefits that they could file claims with the state. The Court held that notice relief was not available because there was no continuing violation of federal law; hence, notices could not be ancillary to a prospective injunction. *Green,* 106 S.Ct. at 427.

2. I cannot find any waiver of Wisconsin's eleventh amendment immunity in either the state or federal benefits statutes. *See Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146; *Welch,* 107 S.Ct. at 2947.

cial benefit; in that time frame, I could have enjoined the head of DILHR from committing a future violation of federal law, consistent with *Hans, Ex Parte Young, Edelman,* and *Green.* Similarly, I could even now entertain a suit brought by parties who claim a continuing violation of the federal Public Safety Officers' Benefits Act—for example, a suit by dependents of living firefighters, or the firefighters' union. This pair of paradoxes highlights what Justice Brennan charitably calls the "complex set of rules" that developed in the wake of *Hans.* *Welch,* 107 S.Ct. at 2970 (Brennan, J., dissenting).

Still, Mrs. Ziemer is not left high and dry. The same eleventh amendment imperatives that prohibit me from hearing this case—state sovereignty and federalism—permit her to pursue her claim in the Wisconsin courts (assuming she meets their jurisdictional and procedural requirements). A state court is perfectly competent to enforce the supremacy clause as one state court did in *Rose v. Arkansas State Police,* 479 U.S. 1, 107 S.Ct. 334, 93 L.Ed.2d 183 (1986).

*Rose,* which came to the Supreme Court by way of the Arkansas court system, did not, of course, raise eleventh amendment questions. *Rose* held that an Arkansas benefit setoff statute, similar to Wisconsin's, frustrated the intent behind the federal Public Safety Officers' Benefits Act and was, accordingly, violative of the supremacy clause. Therefore, unless there are issues lurking here that I do not see, it would seem that *Rose* will force a state court to invalidate 102.475(1)(b). The idiosyncrasies of eleventh amendment law will not allow me to do it. So, I GRANT the state's motion and DISMISS the case. The dismissal, however, is without prejudice so that Mrs. Ziemer can refile her claim in a Wisconsin circuit court.