**John SCOBY, et al., Plaintiffs,**

**v.**

**Michael NEAL, et al., Defendants.**

**No. 87–2250.**

United States District Court, C.D. Illinois.

March 23, 1990.

Thomas E. McClure, pro bono, Bourbonnais, Ill., for plaintiffs.

Marita C. Sullivan, Asst. Atty. Gen., Chicago, Ill., for defendants.

## ORDER

BAKER, Chief Judge.

The plaintiffs are correctional officers at the Danville Correctional Center. They filed this suit pursuant to 42 U.S.C. § 1983 alleging a deprivation of their Fourth Amendment right to be free from unreasonable searches. The plaintiffs allege that on March 30, 1987, the defendants subjected them to strip searches at their place of employment without probable cause or reasonable suspicion. They seek a declaratory judgment and injunctive relief.[1]

This matter is before the court on the defendants' motion for judgment on the pleadings and the plaintiffs' motion for summary judgment.[2]

Rule Nine of the Department of Corrections Employee Rules and Responsibilities states:

> All employees are subject to body and/or strip searches upon entering the institution. Strip searches may only be authorized by the Warden or his designee. Employees' possessions and personally owned automobiles are also subject to search. If an employee refuses to cooperate in a search, he/she may be relieved of duty pending disposition of the matter.

Illinois Dept. of Corrections Employee Rules and Responsibilities, para. 9. The plaintiffs were strip searched under the authority of Rule Nine and the plaintiffs argue that because the rule does not require reasonable suspicion or probable cause, the defendants' actions were unconstitutional.[3]

The defendants state that Rule Nine must be read in conjunction with the Illinois Department of Corrections Administrative Directive 05.01.109, and the Danville Correctional Center's Institutional Directive 05.01.109. The directive states:

> Any employee who is working at, entering or leaving Danville Correctional Center, may be required to submit to a body search at any time if the administration has reasonable grounds to believe that the person has contraband on his person.

---

1. On October 26, 1988 the court held that the defendants were entitled to qualified immunity and thus not liable for money damages.

2. In a March 7, 1990 hearing the court allowed the plaintiffs to amend their pleadings instanter to request injunctive relief and move for summary judgment.

3. Whether in fact probable cause or reasonable suspicion existed to search the plaintiffs is unimportant. The plaintiff's seek a declaration that the existing authority for strip searches is unconstitutional and an injunction against further strip searches. Thus, the focus here is on the validity of the rule and the institutional directive.

Moreover, actions taken under the authority of an unconstitutional statute or regulation are invalid even if they would have been valid under a properly drafted statute or regulation. *See, e.g., Houston v. Hill,* 482 U.S. 451, 463, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987) (City of Houston statute making it illegal to interrupt a policeman in the execution of his duty was declared unconstitutional although some of the plaintiff's (Hill's) conduct might have been punishable under a properly drafted police obstruction statute.); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 160, 92 S.Ct. 839, 842, 31 L.Ed.2d 110 (1971) (The conviction of one of the defendants, Hugh Brown, under an unconstitutional vagrancy statute was reversed although Brown resisted arrest after police discovered heroin on him.).

Danville Correctional Center Inst. Directive 05.01.109, para. II.E.1(b) (effective August 1, 1987).[4] In a different paragraph, the directive states that "all strip searches must be authorized by the Chief Administrative officer or his designee." *Id.* at para. II.E.1(d). The defendants argue that strip searches conducted under the authority of the Administrative Directive/Rule Nine regulation are constitutional. In support of that proposition, they cite *Security and Law Enforcement Employees District Council 82 v. Carey*, 737 F.2d 187 (2d Cir.1984) (the court adopted a reasonable suspicion standard to govern strip searches of corrections officers).

The Fourth Amendment provides:

[t]he right of the people to be secured in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause....

U.S. Const. amend. IV. The amendment's basic purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).

Strip searches are among the most intrusive of all searches. The Seventh Circuit has required probable cause or reasonable suspicion for these intrusions. *See Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983) (strip searches of misdemeanor offenders without probable cause to search any particular offender violated the Fourth Amendment); *Salinas v. Breier*, 695 F.2d 1073 (7th Cir.1982), *cert. denied*, 464 U.S. 835, 104 S.Ct. 119, 78 L.Ed.2d 118 (1983) (strip searches permissible when there was probable cause to arrest for possession of controlled substances); *Doe v. Renfrow*, 631 F.2d 91 (7th Cir.1980), *cert. denied*, 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981) (at least reasonable

cause required before a student may be strip searched). Even the Second Circuit case relied on by the defendants, *Carey*, held that reasonable suspicion is required to justify the strip searching of corrections employees. *Carey*, 737 F.2d at 204.[5]

As quoted above, the administrative directive authorizes *body searches* of corrections employees upon probable cause. The administrative directive defines body search as a "thorough search checking pocket contents, outer garments, and garment openings, shoes, and/or socks may be removed, the hair visually checked, and using the hands to feel over the person's clothed body for concealed contraband." *Id.* at para. II.B.3. The directive defines strip search as a "complete search ... removal of all items and clothing from the body and checking each item. All body areas and cavities are visually checked." *Id.* at para. II.B.4. Thus, even if the defendants' position is accepted and the administrative directive is read in conjunction with Rule Nine, the strip searches authorized by the Rule cannot be combined with the probable cause required for body searches because the directive views them as different searches. As it stands Rule Nine is facially unconstitutional. It does not require either probable cause or reasonable suspicion. In fact, it is devoid of any standard. The rule empowers the warden or his designee to order arbitrary strip searches of any employee. This lack of standard makes the rule in this case similar to the statute struck down by the Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In that case, the contested statute authorized OSHA inspectors to conduct warrantless searches of businesses. The statute contained no standard limiting when the inspector may search except that the inspections were to occur during regular working hours and at other reasonable times. *Id.,*

---

**4.** The correctional center's directive parrots the Illinois Department of Corrections Administrative Directive 05.01.109 (effective July 1, 1984).

**5.** The rule authorizing searches in *Carey* is similar to the rule in this case in that it authorized searches of corrections employees at any time with no governing standards. *Carey*, at 193.

The Second Circuit did not focus on the legitimacy of the rule, however, but instead focused on what standard is required before strip searches may be conducted. To the extent that *Carey* conflicts with the present case, the court declines to follow it for the reasons below.

at 309, n. 1, 98 S.Ct. at 1818, n. 1. The Court declared that the statute violated the Fourth Amendment and enjoined OSHA from conducting further searches under its authorization. *Id.* at 325, 98 S.Ct. at 1827. *See also, Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (Prosecution under an ordinance that made it illegal to refuse to allow city inspectors to conduct warrantless inspections held to violate the Fourth Amendment. The ordinance contained no standards limiting the inspectors discretion except to enter buildings at reasonable times.) *Cf. United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977) (Regulation authorizing postal inspectors to inspect incoming international mail when the inspector has reasonable cause to suspect contraband in the mail upheld.).

■ The defendants argue that the Eleventh Amendment prohibits the plaintiffs from receiving declaratory relief. In support, the defendants cite *Watkins v. Blinzinger,* 789 F.2d 474 (7th Cir.1986), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987). The plaintiffs in *Watkins* filed a claim against the State of Indiana challenging the State's method of calculating the period that an AFDC recipient was disqualified from receiving a lump sum payment. Before a ruling was made on the merits of the complaint, the State discontinued the challenged practice. The Seventh Circuit affirmed the district court's grant of the defendant's motion to dismiss. The Seventh Circuit stated:

> When there is no ongoing violation of federal law ... a suit against a state officer—a suit the decision of which will as a practical matter bind the State—

should be treated for what it is: a suit against the State. The Supreme Court accordingly held in *Green* that when there is no ongoing or impending violation of federal law, a federal court may not issue declaratory or "notice" relief, even though that relief would be "prospective" and would not require payments from the State treasury.

*Watkins,* 789 F.2d at 484. The rationale behind *Watkins* is that a plaintiff ought not be able to make an end run around the Eleventh Amendment by binding the state through a declaratory judgment obtained in federal court and using it to obtain damages in a later state court action. *See Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1986).

The plaintiffs correctly point out that this case is distinguishable from *Watkins* because here, the state has not changed its unconstitutional policy.[6] Thus, the invalid strip searches are capable of repetition.[7]

IT IS THEREFORE ORDERED that the defendants' motion for judgment on the pleadings is denied.

IT IS FURTHER ORDERED that the plaintiffs' motion for summary judgment is granted. The defendants are hereby enjoined from conducting strip searches of corrections officers under the authority of Rule Nine of the Employees Rules and Responsibilities and/or the Danville Correctional Center's Institutional Directive 05.-01.109. The Rule and the Directives, as they pertain to strip searches, are hereby declared to be violative of the Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment.

---

6. The defendants counter that the correctional center changed its policy as of October 15, 1989 and that this case thus falls within the *Watkins* rule. The revised rule now requires the approval of the Director of the Illinois Department of Corrections before strip searches are conducted. Danville Correctional Center's Inst. Directive D05.01.109, para. II.E.1(c) (revised October 15, 1989). This added requirement does not correct the defect of the rule authorizing strip searches; there is still no probable cause or reasonable suspicion requirement. In fact, the revised directive weakens the defendant's position. Where the former directive authorized body

searches upon probable cause, the new directive states that employees may be body searched at any time. *Id.* at para. II.E.1(b).

7. The defendants argue that no "policy" exists to strip search employees because the March 30, 1987 searches were the only ones ever conducted. This argument is without merit. The "policy" under consideration is stated in the rule and institutional directive that authorized those searches. Since the rule and directive are still in force, further searches are possible.

The Clerk is ordered to enter judgment accordingly.