118 F.3d 1148
 Medicare & Medicaid Guide P 45,450
Helen EGAN and Donna Belcher, individually and on behalf of
a class of others similarly situated, Plaintiffs-Appellees,
v.
Katherine DAVIS, Secretary of the Indiana Family and Social
Services Administration, et al., Defendants-Appellants.
 No. 97-1184.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 5, 1997.
Decided June 25, 1997.
 
 Kenneth J. Falk (argued), Indiana Civil Liberties Union, Indianapolis, IN, for plaintiffs-appellees.
 Beth Henkel (argued), Anthony Scott Chinn, Office of the Attorney General, Indianapolis, IN, for defendants-appellants.
 Frank W. Hunger, Office of the United States Attorney General, William Kanter, Department of Justice, Civil Division, Appellate Section, Harriet Rabb, Department of Health and Human Services, Washington, DC, James B. Burns, Office of the United States Attorney, Chicago, IL, Henry Goldberg, Office of the General Counsel, Dept. of HHS, Baltimore, MD, for amicus curiae.
 Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 States that participate in the Medicaid program must provide "a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied". 42 U.S.C. § 1396a(a)(3). Indiana has a cadre of administrative law judges who take evidence and render decisions at the behest of applicants whose claims are initially denied. If an ALJ denies a claim, the applicant may appeal to a higher administrative level; if the ALJ awards benefits, the state or its fiscal intermediary may appeal to these same officials.
 
 
 2
 Helen Egan and Donna Belcher, disappointed by decisions concerning medical assistance (the fiscal intermediary declined to authorize the purchase of a wheelchair for Egan, and the state's Medical Review Team determined that Belcher no longer qualified for the program), sought hearings before ALJs, who ruled in their favor. Appeals were taken by local officials in Belcher's case and by the intermediary in Egan's. Fearing the worst, Egan and Belcher filed this suit as a class action under 42 U.S.C. § 1983, contending that Indiana's provision for appellate review of ALJs' decisions violates 42 C.F.R. § 431.205(b), which reads:
 
 
 3
 The State's hearing system must provide for-
 
 
 4
 (1) A hearing before the agency; or
 
 
 5
 (2) An evidentiary hearing at the local level, with a right of appeal to a State agency hearing.
 
 
 6
 An ALJ provided by the state is "the agency" for purposes of this regulation. It follows, plaintiffs contend, that there can be no appeal from decisions favorable to applicants--for appeal is authorized only under § 431.205(b)(2), when the hearing occurs at "the local level". If this is so, the regulation has another consequence: applicants cannot appeal unfavorable decisions by ALJs but must instead seek whatever review may be had in court.
 
 
 7
 Although the suit was filed in 1994, the district court (acting through a magistrate judge, on the parties' consent) did not certify the class until late 1996. By then, the administrative appeals were but vague memories. Both plaintiffs had prevailed: Egan got a wheelchair, and Belcher retained her eligibility. Neither has since been before an ALJ. The parties and the magistrate judge did not discuss whether this made the case moot--indeed, whether the case had ever been live, given that neither plaintiff lost a penny in benefits. Addressing the merits, the magistrate judge agreed with the plaintiffs' position and issued an injunction forbidding the defendants from "modifying and/or reversing any decisions issued by its [sic] Administrative Law Judges which are favorable to Medicaid applicants and/or recipients". Although the injunction speaks only of decisions favorable to applicants, if the magistrate judge is correct, then the regulation also requires Indiana to stop entertaining applicants' appeals from adverse decisions. Appearing as an amicus curiae, the United States informs us that the regulation's author, the Secretary of Health and Human Services, believes that it does not forbid administrative appeal systems for Medicaid claims--but the United States noted the potential jurisdictional problem and suggested that the court avoid a decision on the merits.
 
 
 8
 Egan and Belcher did not suffer monetary injury from the administrative appeals of their claims. They prevailed on the merits and did not incur any expense in opposing the appeals. Injury from pending appeals--the need to participate in unwelcome procedures, potential delay in the receipt of benefits (though ALJs' decisions are supposed to be implemented while an appeal is pending), and the threat of adverse decision--gave plaintiffs standing at the time the suit began. Yet the procedures soon ended and the threat of financial loss was dispelled. Plaintiffs did not seek, and could not have received, money damages to compensate for whatever anxiety or delay the administrative appeals may have created. See Arizonans for Official English v. Arizona, --- U.S. ----, ---- - ----, 117 S.Ct. 1055, 1069-70, 137 L.Ed.2d 170 (1997); Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). What they sought and received is an injunction forbidding appeals from future decisions--but this injunction does not appear to affect their own interests.
 
 
 9
 If a class had been certified while the administrative appeals were pending, then the principle of Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)--that mootness of a plaintiff's personal claim does not prevent him from serving as the representative of a class--would have been activated. But it was not certified in time, and Indianapolis Board of School Commissioners v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), holds that a case must be dismissed if the representative's claim becomes moot before certification. No other member of this class has volunteered to become a representative. In the span from August 1993 through October 1994 Indiana reversed 28 decisions in which ALJs had favored claimants. These applicants and others similarly situated (data for months after October 1994 are not in the record) would have live claims, but none has appeared on the scene. So unless either Egan or Belcher is today a proper plaintiff, the case must be dismissed as moot.
 
 
 10
 Neither Egan nor Belcher has any pending claim for benefits. Both are still eligible, so recurrence of the dispute is more likely than it would be for a member of the public at large--although, given Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), Murphy v. Hunt, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982), and Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), which hold that a low probability of recurrence does not create a current case or controversy, we have our doubts that either plaintiff has established that her dispute with the state is capable of repetition. Data in the record do not permit us to estimate how frequently disputes arise and how many of these are resolved by ALJs, though we do know that most decisions by ALJs favorable to claimants are enforced without appeal. What is more, we doubt that a dispute, if one recurs, will again evade review. Anyone whose claim is sustained by an ALJ and rejected on an administrative appeal has an enduring claim for relief. This case, too, would have avoided problems had the magistrate judge followed the command of Fed.R.Civ.P. 23(c)(1): "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Shortly after suit was filed, the parties agreed that it could be maintained on behalf of a stipulated class. The judge's inexplicable two-year delay in certifying the class, rather than the evanescence of the claims, is what has brought us to this pass.
 
 
 11
 Plaintiffs not only do not have any pending claims for benefits, but also do not know on what side they will stand if they make such claims in the future. Either side can appeal, or neither side can appeal. Will ALJs rule in their favor, exposing them to a risk of appeal by the state, or will the ALJs rule against them, making ability to file an administrative appeal a valuable option? Appeals by disappointed claimants are more common than appeals from awards of benefits, and reversals in claimants' favor more frequent than reversals that upset awards. (During the period for which data are available, 64 denials and 28 grants of benefits were reversed on administrative appeal in Indiana.) Plaintiffs claim to dread the prospect of unwelcome appeals and the reversal of favorable decisions, but ex ante--the position they now occupy, before they know whether they will again come before an ALJ and how the ALJ will decide--the appeals process offers net benefits to claimants. Plaintiffs lack standing to challenge a process that on balance makes them and the class of other applicants better off. Persons who actually lose as a result of the administrative appeal would be appropriate plaintiffs, but as we have stressed no such person is before the court.
 
 
 12
 One last possibility requires consideration. Plaintiffs contend that a final decision, including the result of an appeal, must be rendered within 90 days of a request for a hearing. See 42 C.F.R. § 431.244(f). According to the complaint, Indiana treats 90 days as the limit for decision by an ALJ and takes additional time to resolve an appeal. Arguments about the time within which to complete an appeal are no more live than arguments about the propriety of taking appeals. Plaintiffs may not become involved in another appeal; should they do so, the process may be completed within 90 days; and, once again, it is not clear ex ante where plaintiffs' interests lie. Indiana begins paying benefits as soon as an ALJ rules in a claimant's favor, and it does not recoup benefits paid between an ALJ's decision and an appellate reversal. A longer appeal process following an award of benefits by an ALJ then works in a claimant's favor, because the claimant receives and keeps benefits in excess of the legal entitlement. Conversely, however, a longer appeal process hurts the applicant when the ALJ denies the claim, and the appellate body concludes that the applicant is entitled to the benefit or service requested. A court should await a concrete dispute rather than attempt to sort out these conflicting patterns of advantage and disadvantage in the abstract.
 
 
 13
 The judgment of the district court is vacated, and the case is remanded with instructions to dismiss the complaint for lack of a case or controversy.