**Michael TONEY, et al., Plaintiffs,**

v.

**Roland BURRIS, Defendant.**

**No. 86 C 3333.**

United States District Court,
N.D. Illinois, E.D.

Nov. 15, 1988.

**688**

Walter S. Clifton, Burnell Dixon, Urbana, Ill., Edward Little, Milwaukee, Wis., and Jimmie Jenkins, Chicago, Ill., for plaintiffs.

Alison Breslauer, and Gladys Stevens, Illinois Atty. General's Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

The plaintiff, Michael Toney, brought suit under 42 U.S.C. § 1983 for declaratory and injunctive relief against Roland Burris, Comptroller of the State of Illinois, on behalf of himself and all others who have had or will have funds withheld pursuant to the State Comptroller Act, § 10.05, Ill.Ann. Stat. ch. 15, ¶ 210.05 (Smith–Hurd 1988). The plaintiff is a state employee whose paychecks were being offset to reduce the balance due the state under his student loans. The plaintiff alleged that the statutory offset provision was unconstitutional because it deprived him and others similarly situated of property and failed to provide them with predeprivation notice and a meaningful opportunity to be heard. The district court certified a class consisting of "all persons who have had or will have their funds withheld by the defendant acting pursuant to Ill.Rev.Stat. Ch. 15, § 210.05," and held that the statute was unconstitutional on its face and as it was applied to plaintiff. *Toney v. Burris,* 650 F.Supp. 1227, 1243 (N.D.Ill.1986). The district court therefore granted plaintiff's motion for summary judgment and enjoined the defendant from enforcing Ill.Rev.Stat. ch. 15, section 210.05 and its implementing regulations. The defendant appealed.

On appeal, the *Court of Appeals for the Seventh Circuit discovered that new regula-*tions were adopted by the defendant while the case was pending in the trial court which may have resolved any constitutional problems then existing under the prior regulations. 829 F.2d 622. *The Court of Appeals remanded it to this court for that determination. The Court of Appeals also stated that if the new regulations comported with due process requirements then the eleventh amendment bars the court from granting declaratory and injunctive relief. Finally, if defendant persuades this court that the new regulations are constitutional and assures that the previous questioned conduct will not be resumed, this dispute is moot. The issues now having been framed, the resolution of them is set forth below.*

### I

Versions of the facts underlying this case now appear in one form or another in the court record of this case at least six times, including in the first opinion of this case and in the decision of the Court of Appeals. To repeat them again should be unnecessary. Nevertheless several facts which have not been clearly mentioned should on this third judicial review of them be highlighted. They include the following.

1. When on May 5, 1983 the First National Bank of Chicago notified the Illinois State Scholarship Commission (ISSC) that when the loan was taken out, the plaintiff, then the student borrower, acknowledged with his signature a statement of Borrower's Responsibilities. This statement provided among other things the following:

> "I understand that if I fail to repay my loan as agreed under Illinois Guaranteed Loan Program Regulations I face possible legal action by the State of Illinois."

2. The bank brought this to the attention of the Commission. The bank also brought to the Commission's attention the fact that the borrower, our plaintiff, wasn't paying off his loan obligations as he had agreed to. It was under these circumstances that the Commission paid off the bank and took over the loans. The Commission then notified the borrower that it was holding the notes and that unless he

straightened out his deficits it would process an offset against his salary as an employee of the state, to which he responded by going into offices of the Commission and entering into a special agreement to repay his student loans in monthly installments the amounts of which would be subject to renegotiation within a year if he found it difficult to meet them.

3. But when his pattern of delinquency continued on, threatening letters from the Commission about his pattern of delinquency went unheeded by him through more than two years until in January of 1986 the Commission sent him its third notice of its intent to seek offsets against his salary checks.

4. Records reflect that during the 22 months between March 13, 1984 and January 30, 1986, Mr. Toney made only 9 payments on his obligation, but in February of 1985, he and his wife had already filed their first petition in bankruptcy seeking to be discharged of all of their debts, including his obligation to the State of Illinois, which, of course, was still his employer and the source of his income. Then again on April 1, 1986, he and his wife filed anew their petition for bankruptcy listing this obligation as one of their debts, and an automatic stay of all of his debt obligations went into effect.

5. In January of 1986 the Commission notified Toney of its intent to ask the Comptroller, the defendant here, to go through with the offset, and that the only thing Toney could do to stop the offset would be to pay off the debt in full. Toney had never disputed with the Commission the fact or the amount of his obligation, and he constructively acknowledged it when he listed it as a liability in his voluntary bankruptcy petition on April 1, 1986.

6. When 12 days later the Comptroller notified him that he had the case and was proceeding with a set aside of $280 from his wages, allowing him 30 days in which to protest their action in writing, the plaintiff didn't get in touch with the Comptroller to tell him, "You can't do that. I have filed bankruptcy and there is an automatic stay on the enforcement of any obligation against me."

7. Instead, he hurried into this court and on May 12, 1986 filed this case against the Comptroller, charging the Comptroller, on behalf of all other tuition borrowing state employee students as well as on behalf of himself, with operating a collection program in violation of his and their rights to due process by taking from him and them property interests without giving them notice and an opportunity to be heard.

8. There is nothing in the case to indicate that Toney had any disagreement about the fact of his obligation to the ISSC. He didn't make the Commission a defendant in this case. He indicates no factual controversy between him and either the Commission, with whom he had had all of his dealings, or the Comptroller. His complaint is over the procedure of the Comptroller in setting aside from his wages for 30 days the amount of a payment toward the reduction of his outstanding obligation to the ISSC. Paradoxically, had the Comptroller received timely notice from someone of the filing of the bankruptcy petition he presumably would have returned the matter to the ISSC. At least he would have made no deduction from the plaintiff's paycheck.

## II

Judge Getzendanner found that the breakdown in the requirement of due process in this case was the action of the Comptroller in withholding the $280 payment from Toney's paycheck as he notified Toney of his 30 days in which to file a protest. I would clarify that to mean the 30 days in which Toney could bring to the Comptroller's attention the fact about the bankruptcy petition. There wasn't anything else he needed to bring to anybody's attention. When he was notified of the intent of the Commission to ask the Comptroller to proceed with an offset, he was given 15 days to pay off the full obligation as his only alternative, but the amount of the indebtedness had already been established when the matter was in the hands of the ISSC and he was in communication

with them. And when the Comptroller notified him of the offset, he was informed that the withholding part of the offset had taken place, but that it would be held as in an escrow for 30 days before it would be sent over to the Commission during which time he was free to call on the Comptroller and protest if he thought that the amount was incorrect.

Judge Getzendanner in her determination of the case was of the opinion that under the procedure that was set up then, this notice, for what it was worth to the plaintiff, was no due process at all, because even if during the 30 days of escrow the plaintiff had some disagreement about the figures in the Comptroller's letter, he, the plaintiff, had already experienced the withholding from his wages when he received the notice.

Even though on rehearing of this determination I agree with Judge Getzendanner about the shortcomings of the original procedure itself, which shortcomings, including the meaningless due process role of the Comptroller, left the student-employee-borrower without adequate opportunity to contest either the liability or the amount and the manner of the withholding before a taking had become an accomplishment, one is tempted to observe that the only substantive controversies, if any, between the plaintiff and the state had to have been existing at the time the matter was in the hands of the ISSC (and again it is noted that he did not make the ISSC a defendant in the case). One exception again to be noted is the fact that when the Comptroller withheld the $280 from Toney's salary on April 12, 1986, the automatic stay of the bankruptcy court had already gone into effect 12 days earlier prohibiting the collection of all scheduled obligations including here the indebtedness of the plaintiff to the ISSC. Considering what usually happens in bankruptcy proceedings the creditor here, the ISSC, upon receipt of notice would have stopped its collector, the Comptroller, from processing its claim. Whether or not the ISSC received timely notice and neglected to stop the collection of its claim, the proper party to the controversy is the ISSC and not the Comptroller.

Assuming that there was, at the time of the first decision in this case a case or controversy, Judge Susan Getzendanner, to whom the case then was assigned, granted plaintiff Toney's motion for class certification, granted his motion for summary judgment finding the procedure unconstitutional, and denied the defendant Comptroller's motion for abstention. Her decision was rendered on October 31, 1986. Prior to her decision, in June of 1986, the statutes and regulations pertaining to the offset procedure in Illinois (Ill.Rev.Stat. ch. 15, ¶¶ 210.-05-.05b and 74 Ill.Admin.Code § 285.1101–1106) were amended. Illinois Public Act 84–1290 was approved and became effective on July 1, 1986. It modified the offset laws and specifically it added new provisions regarding the state's "paymaster," the Comptroller. At approximately the same time the Comptroller brought about changes in his regulations and procedures to cause them to comply with the purposes of the amendment to the statute.

These changes in Illinois law were not brought to the attention of Judge Getzendanner before she decided the case later that year. This is why the Court of Appeals reversed her opinion and sent the case back to the District Court.

The remand to this court is for a determination at this level whether the offset rules as we now know them to have been amended by the time of the first decision comport with the requirements of due process of law. The issue has been briefed by both sides, and the court here is of the opinion that the constitutional requirements of due process are adequately met by the procedure directed by the amended statutes and regulations.

### III

Wages are a very specialized type of property. So it was expressed by the Supreme Court in its opinion in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969). And when the state, through its procedures, withholds wages of its employees to pay their personal unpaid debts and

delinquent obligations, it is engaged in a taking that must be done in a manner that comports with the fairness concept of "due process of law." It has long and firmly been established that the procedure followed must require that before a taking occurs, both an adequate notice and a meaningful opportunity for the employee to be heard in opposition to it is afforded. *Miller v. City of Chicago,* 774 F.2d 188, 191 (7th Cir.1985) and cases cited therein; *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). However, the "process is flexible and calls for such procedural protections as the particular situation demands." *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 616 F.2d 1006 (7th Cir. 1980) (citing *Morrisey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

In *Mathews v. Eldridge, supra,* the Supreme Court set out the way in which courts determine whether administrative regulations comport with constitutional due process of law:

> ...resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interest that are affected. *Arnette [Arnett] v. Kennedy, supra,* [416 U.S. 134] at 167–168 [94 S.Ct. 1633 at 1650–1651, 40 L.Ed.2d 15 (1974) ] (Powell, J., concurring in part); *Goldberg v. Kelly, supra,* [397 U.S. 254] at 263–266 [90 S.Ct. 1011 at 1018–1020, 25 L.Ed.2d 287 (1970) ]; *Cafeteria Workers v. McElroy, supra,* [367 U.S. 886] at 895 [81 S.Ct. 1743 at 1748, 6 L.Ed.2d 1230 (1961) ]. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official actions; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, *e.g., Goldberg v. Kelly, supra* [397 U.S.] at 263–271 [90 S.Ct. at 1018–1022].

*Mathews v. Eldridge,* 424 U.S. at 334–335, 96 S.Ct. at 902–903.

The performance of the Illinois State Scholarship Commission when handling an Illinois Guaranteed Student Loan is directed like other state administrative agencies by procedures set out in provisions of the Illinois Administrative Code. According to section 1720.70 of Chapter 9 (23 Ill.Adm.Code ch. 9, § 1720.70) on Reimbursement Procedures, when a borrowing student is in default and the Commission takes over the account, it takes certain prescribed steps to determine that the borrower is willfully evading his obligation before sending it to the Comptroller for an offset. This procedure was in effect when this case was first decided, and it is in effect at this time. These steps include repeatedly contacting the borrower, contacting his parents, or references listed on the application for the loan, using a licensed collection agency, litigating issues concerning which the borrower disagrees as to the terms of their agreement, and finally notifying him in person before the matter is sent through for the processing of an offset, during which time he is again invited to appeal any disagreement he has over the amount of his obligation or the terms of repayment.

The performance of the Comptroller today in handling the offset once it is turned over to him is the performance which had just been put in place when Judge Getzendanner rendered her opinion. It too is set out in provisions of the Illinois Administrative Code. According to provisions of section 285.1102 of Chapter 11 (74 Ill.Adm. Code ch. 11, § 285.1102) on Requests for Processing Claim under section 10.05 of the Act, which amended version of the Act was in place on June 3, 1986, before the Comptroller will process an offset he must have received notice from the ISSC that the obligation had been established by a procedure that afforded the borrowing but delinquent student "notice and an opportunity to be

heard," and in seeking to satisfy his requirement on this issue the ISSC must include in its reference of the delinquent account to him a description of the type of notice that was given, and the type of opportunity to be heard that was afforded the delinquent student, the outcome of the hearing or a statement that no hearing was requested, and any other information that would be necessary to describe the claim. This information must be given the Comptroller by a responsible person in the agency. If the Comptroller finds that the debt sent him for an offset had not been established by due process he would himself violate the law by processing the offset. The presumption is that he would refuse to process it. Then, according to section 285.-1106, when he does process a claim he must give a notice to the employee that includes a copy of the information by which the ISSC had referred the offset request to him, and must inform the employee that within the next 30 days, during which time he will be holding the offset amount in escrow, i.e., it will have been withheld but not turned over to the agency, the employee may file a written protest and the matter would be set down for a hearing.

Still more recent than the amendments to the provisions discussed above, has been the establishment, by amendment, of improved appeal procedures, adopted January 29, 1987, which serve to increase still more the quality of due process available for these cases in Illinois. Appeal procedures on these student/employee offset cases are found in 23 Ill.Adm.Code ch. 9 section 1700.70.

These procedures now provide for appeals from the decisions of the ISSC. A complainant, either a student or a lending institution, may appeal within the structure of the ISSC any administrative decision made under the Act. The appeal is heard and reheard on subsequent appeal up to a hierarchy of top officers of the agency. First the Division Director, then the Chief Executive Director, and finally the Executive Officer. Any decision may be heard on appeal if the appeal request is filed within 60 days after the decision from which the appeal is taken. The complain-

ant may be represented by counsel, and the officer hearing the appeal is authorized to make corrections himself in determinations appealed from. Similarly, a protest or appeal procedure has long existed with relation to decisions of the Comptroller's office. It has been found in the Comptroller's Uniform Statewide Accounting System (CU-SAS) Procedure 33.12.11. This procedure, available forthwith upon a withholding is now published as an amendment to the procedures found in 74 Ill.Adm.Code ch. 11 sections 285.1102–1105.

The court finds that the procedures outlined above including the amendment of 74 Ill.Admin.Code section 285–1102 were already in place as of June 3, 1986, and adequately protect student loan debtors from erroneous deprivations of their property interest in their income or wages when they are offset by the Comptroller. I find that the procedures now in place constitute the assumption by the state of substantial fiscal and administrative burdens to the end that the risk of an erroneous deprivation of the private interest of the "student-borrower-employee" be held to a minimum. These procedures and regulations pass the *Mathews* test and, therefore, comport with the constitutional requirement of due process of law.

## IV

Having found that the regulations and procedures as amended comport with due process requirements, it becomes necessary to deny plaintiff's request for declaratory and injunctive relief. As the Court of Appeals stated in its decision "[i]f the new rules comport with due process, the defendant is correct in his assertion that the eleventh amendment bars the court from granting declaratory and injunctive relief to the plaintiffs." *Toney v. Burris*, 829 F.2d 622, 626 (7th Cir.1987) (citing *Green v. Mansour*, 474 U.S. 64, 67–68, 106 S.Ct. 423, 425, 88 L.Ed.2d 371 (1985); *Dial v. Coler*, 791 F.2d 78, 80 (7th Cir.1986); *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987)). This is so because there is now no ongoing violation of federal

law. As the Court of Appeals stated in *Watkins,*

> [w]hen there is 'no ongoing violation of federal law' (*Green, supra,* 106 S.Ct. at 425), a suit against a state officer—a suit the decision of which will as a practical matter bind the state—should be treated for what it is: a suit against the state. The Supreme Court accordingly held in *Green* that when there is no ongoing or impending violation of federal law, a federal court may not issue declaratory or 'notice' relief, even though that relief would be 'prospective' and would not require payments from the state treasury.

*Watkins v. Blinzinger,* 789 F.2d at 484.

Finding that this case falls squarely within the dictates of *Green, supra,* plaintiff's request for declaratory and injunctive relief must be and the same hereby is denied.

It further follows in the same manner that because the Comptroller's regulations and procedures in regard to offsets of employee's/debtor's wages are now determined to comport with due process, the issue of whether plaintiff was deprived of a property interest without due process is moot. In order to reach this determination the court again assures itself that "the questioned conduct will not be resumed." *Watkins v. Blinzinger,* 789 F.2d at 483; *City of Los Angeles v. Lyons,* 461 U.S. 95, 100–101, 103 S.Ct. 1660, 1664–1665, 75 L.Ed.2d 675 (1983).

Exhibits in the record demonstrate the willingness of the Comptroller to ensure due process protection prior to receipt of a request to offset. On June 11, 1986, Accounting Bulletin No. 51 was issued informing agencies of the due process requirements which each must meet prior to requesting the Comptroller to offset a warrant. The bulletin was sent to each agency head and agency chief fiscal officer in the State. In addition, the legal counsel for the Comptroller held seminars in February of 1987 explaining the due process requirements which had been revised in June of 1986.

These efforts, in addition to the fact that the offset procedures were first modified by the Comptroller on his own initiative, assure this court that under the present state of the law and procedure the questioned conduct of the past will not be resumed. The case is dismissed.