Hurley v. Fuyat                           CV-93-135-B    12/17/93
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Peter H. Hurley

        v.                                  Civ. No. 93-135-B

John E. Fuyat, et al.


                          O R D E R


     This action arises from the unsavory judicial conduct of

John E. Fuyat, a former Associate Justice of Rhode Island Family

Court.  Plaintiff, a family court litigant, brought this civil

rights action pursuant to 42 U.S.C. §1983.  Plaintiff alleged

that Fuyat's alcoholism, his persistent failure to perform his

judicial duties, and his solicitation and acceptance of "loans"

from opposing attorneys denied plaintiff his Fourteenth Amendment

right to procedural due process.  Plaintiff sued Fuyat personally

and in his official capacity as an Associate Justice of Rhode

Island Family Court.  He also named as defendants in their

official capacities three individuals whose ostensible duty it is

to ensure that Family Court judges do not deprive litigants of

their due process rights:  Thomas F. Fay, the Chief Justice of

the Rhode Island Supreme Court; Jeremiah S. Jeremiah, the

Presiding Justice of the Family Court of the State of Rhode

Island; and Thomas H. Needham, the Chairman of Rhode Island's Commission on Judicial Tenure and Discipline. The claims against Fuyat have been voluntarily dismissed. The remaining defendants together now move that I dismiss the counts against them pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6).[1]

## I. Facts

Plaintiff was the defendant in a divorce action assigned to Judge Fuyat in 1988. Over the course of the litigation, Fuyat allegedly solicited and accepted "loans" and "favors" from both plaintiff's wife's attorney and the attorney representing plaintiff's mother-in-law, an intervenor in the case. Plaintiff contends that before trial, Fuyat solicited and accepted a $4,000 loan from the mother-in-law's attorney. Then, a few days after the trial began, this attorney's law partner arranged for their

---

[1]Defendants have previously had their motion granted by Judge Boyle of the Federal District Court for the District of Rhode Island. Soon after issuing his opinion, however, Judge Boyle found out that his daughter had been offered a clerkship in Rhode Island Family Court for the upcoming term. To avoid any appearance of impropriety, the judge retracted his opinion and recused himself from the case. As the other judges from that district also have recused themselves for various reasons, the case has been assigned to me.

2

investment partnership to "loan" the judge a further $20,000. Finally, in March 1989, when plaintiff had objections pending before the court, Fuyat solicited a loan from plaintiff's wife's attorney, who, as a "favor," arranged for a friend to "loan" the judge $50,000.

Plaintiff further alleges that his divorce action was plagued by unnecessary delays because Fuyat persistently failed to perform his judicial duties. The action was first assigned to Fuyat in June 1988 and the trial date set for September 23. Fuyat's unexplained absences from the courtroom, however, prompted six postponements. As a result, the trial did not begin until November 30. Fuyat ultimately heard evidence on nine separate occasions and concluded the case on May 4, 1989. During this period, the proceedings were postponed at least ten times, allegedly because Judge Fuyat was "absent or otherwise and without explanation unavailable."[2]

---

[2]As additional evidence of Fuyat's disregard for his judicial duties, plaintiff alleges that, rather than decide contested issues, Fuyat would retreat to chambers and endlessly urge attorneys to settle. Plaintiff contends that this style of case management, as well as the allegedly inordinate amount of time Fuyat spent attending to personal matters, resulted in backlogged cases, untimely decisions, and deferred and delayed proceedings.

Finally, plaintiff asserts that Fuyat's addiction to alcohol and/or drugs contributed to the above delays and further tainted the proceedings. To support this claim, plaintiff alleges that Fuyat was an alcoholic throughout his tenure on the bench; that Fuyat checked himself into an inpatient alcohol and drug rehabilitation facility after the Chief Justice relieved him of his duties on August 25, 1989;[3] and that when Fuyat tendered his resignation a month later, he cited alcoholism as the reason.

Plaintiff's complaint states that, although the other defendants did not know of Fuyat's alcoholism or of the "loans" until Fuyat's August 25 suspension, these defendants proximately caused plaintiff's injuries. Plaintiff alleges that the Chief Justice knew that drugs and alcohol were a national problem, yet failed to establish the policies and procedures necessary to ensure that the Rhode Island courts were drug and alcohol-free.

---

[3]The Chief Justice of the Rhode Island Supreme Court was informed of Fuyat's creative financing techniques and promptly relieved him of his duties pending an investigation by the Commission on Judicial Tenure and Discipline. In September, the Presiding Justice informed plaintiff and the other parties to the divorce action that they had three options: (1) settle; (2) have another judge review the record and decide the case; or (3) relitigate. The parties decided to relitigate. On March 23, 1990, the Rhode Island Supreme Court disbarred Fuyat. Several months later, the Supreme Court also suspended the mother-in-law's attorney and his law partner.

4

Plaintiff also alleges that the Presiding Justice of the Family Court knew or should have known of Fuyat's willful and/or persistent failure to perform his judicial duties, but did not refer him to the Commission on Judicial Tenure and Discipline. While plaintiff primarily faults the Presiding Justice for this failure, he also blames the Chief Justice and the Chairman of the Commission. Plaintiff alleges that they failed to promulgate the standards, policies and procedures necessary for supervisors like the Presiding Justice to determine whether a subordinate judge has willfully or persistently failed to perform his or her judicial duties.

Plaintiff's complaint initially alleged 11 counts, seven against Fuyat and four against the other defendants. By stipulation, the counts against Fuyat have been either "voluntarily dismissed" or "dismissed with prejudice". The remaining counts -- Counts 3 through 6 -- are asserted solely against the Chief Justice, the Presiding Justice and the Chairman of the Commission.

Counts 3 and 4 seek to hold the three defendants liable for failing to protect plaintiff from Fuyat's alcoholism and willful failure to perform his judicial duties. Count 3 requests that the District Court declare that defendants, in their official

5

capacities, violated plaintiff's Fourteenth Amendment right to a "meaningful hearing at a meaningful time" by failing to establish policies and procedures to ensure that (1) "Rhode Island Family Court is a drug and alcohol free workplace," and (2) that an alcoholic or drug-addicted Family Court judge is promptly "identified and rehabilitated and/or disciplined." Count 4 requests that the District Court declare that defendants have violated plaintiff's Fourteenth Amendment rights by failing to establish policies and procedures to ensure that Family Court judges who willfully or persistently fail to perform their judicial duties are "promptly identified, disciplined and, if necessary, removed from office." In each count, plaintiff also seeks an injunction requiring defendants to "establish and implement" the absent policies.

Counts 5 and 6 are brought solely against the Chief Justice and the Chairman of the Commission and relate to Fuyat's solicitation and acceptance of "loans" and "favors" from the opposing attorneys in plaintiff's divorce action. Count 5 requests that the District Court declare that defendants violated plaintiff's Fourteenth Amendment rights by failing to (1) notify him that his proceedings had been tainted by the "loans," and (2) notify him of what remedies the judiciary or the Commission would

6

provide by which plaintiff could assert a claim against Fuyat in his official capacity. This count also seeks an injunction ordering defendants to provide the missing notice relief. Count 6, perhaps an alternative to Count 5, asks the District Court to declare that the Rhode Island law establishing the Commission is unconstitutional to the extent that it "fails to authorize and require [defendants] to identify adversely affected litigants and to provide such litigants" with the notice relief requested in Count 5. Count 6 also requests that the District Court award "appropriate equitable and injunctive relief", costs and attorneys' fees.

## II. DISCUSSION

### A. Standard of Review

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted). Accordingly, in determining whether Counts 3 through 6 should be dismissed pursuant to Rule 12(b)(6), I must review the allegations of the complaint in the light most

7

favorable to plaintiff and accept all material allegations as true.[4]  See, e.g., Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991).  Even when construed most liberally, however, Counts 3 through 6 fail to state viable claims for relief.

    B.    Counts 3 and 4:  Establishment of Policies
          and Procedures

As previously described, Counts 3 and 4 request that I declare that defendants have failed to establish policies and procedures which adequately protect Rhode Island Family Court litigants from the unconstitutional conduct of alcoholic and/or irresponsible judges.  More importantly, plaintiff seeks injunctive relief ordering defendants to establish the policies and procedures necessary to ensure that the Rhode Island Family Court is an alcohol and drug-free work place and that Rhode Island Family Court judges who willfully or persistently fail to

--------

[4]Although plaintiff currently appears pro se, he was previously represented by counsel who drafted both his complaint and his brief opposing defendants' motion to dismiss.  As a result, his complaint does not benefit from the "less stringent standards" that would apply if he had drafted his complaint himself.  Cf. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988).

8

perform their judicial duties are promptly identified, disciplined or removed from office. Although there are several reasons[5] for dismissing these counts, I focus on the two most fundamental.

First, plaintiff does not have standing to assert the claims for the prospective declaratory and injunctive relief requested in either count. To invoke the jurisdiction of the federal courts, Article III requires that plaintiff have the "personal stake in the outcome" of the case necessary to ensure that a live

---

[5]For example, federalism concerns alone would require that Counts 3 and 4 be dismissed. See e.g., Rizzo v. Goode, 423 U.S. 362, 369, 378-381 (1976) (federalism concerns precluded injunction ordering Philadelphia's mayor and Police Commissioner to draft a comprehensive system for adequately dealing with civilian complaints).

Moreover, plaintiff has failed to name several defendants necessary to ensure that he can be afforded complete relief. See Fed. R. Civ. P. 19. Plaintiff names the Chief Justice of the Supreme Court and the Presiding Justice of the Family Court as defendants; the "power to make rules regulating practice, procedure and business" of Rhode Island's Supreme Court and Family Court, however, is vested in "a majority of their members". R.I. Gen. Laws §8-6-2 (1985) (emphasis added). Although plaintiff also names the Chairman of the Commission as a defendant, the Commission is an investigative body that makes disciplinary recommendations to the Rhode Island Supreme Court regarding individual Rhode Island judges. R.I. Gen. Laws §8-16-4 (Supp. 1992). The Commission is not authorized to adopt practices and/or procedures for the Rhode Island Family Court. Id.

case or controversy exists.  Flast v. Cohen, 392 U.S. 83, 101 (1968) (citation omitted).  Counts 3 and 4 allege that, as a result of defendants' failure to promulgate adequate disciplinary policies, plaintiff has previously fallen victim to an alcoholic and irresponsible judge.  "Past exposure to illegal conduct [however] does not in itself show a present case or controversy regarding [prospective] injunctive relief ...."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).  Instead, to satisfy the personal stake requirement plaintiff must allege that the illegal conduct has "continuing, present adverse effects," id. at 496, which are currently causing or threatening to cause him "real and immediate" injury.  Lopez v. Garriga, 917 F.2d 63, 67 (1st Cir. 1990) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).

The speculations necessary to create a "real and immediate" injury for plaintiff are of a type that have repeatedly been found insufficient to create a "case or controversy."  Plaintiff implicitly asks that I speculate as to when and how he might again appear in Rhode Island Family Court, a step the Supreme Court refused to take in O'Shea.  See 414 U.S. at 496-97.  Further, once I envision him there, plaintiff asks that I speculate that the presiding judge is an alcoholic and/or

10

irresponsible, a conceptual leap of the type that the Supreme Court rejected in Lyons. See 461 U.S. at 105-06. Finally, the scene conjured up by these speculations clearly shows that plaintiff's "real and immediate" injury does not stem from what named defendants might do to him in the future; instead, plaintiff fears that, given the Family Court's lack of proper disciplinary procedures, one of a small, unnamed minority of alcoholic and/or irresponsible judges might injure him in the future because that unknown judge feels that he or she can do so with impunity. In Rizzo, the Supreme Court held that similar allegations of future injury were too attenuated to warrant invocation of federal jurisdiction.[6] 423 U.S. at 372-73. I hold the same here.

Second, to the extent that plaintiff has standing to assert the requests for declaratory relief contained in counts 3 and 4, this relief is barred by the Eleventh Amendment. As previously

---

[6]Any injury that the lack of procedures causes to plaintiff's interest in an alcohol and misconduct-free judiciary does not give plaintiff standing to assert Counts 3 or 4. Such "generalized grievances", undifferentiated from those of all other Rhode Island citizens, are abstract injuries insufficient to satisfy Article III's personal stake requirement. See, e.g., Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 217 (1974) (quoting Flast, 392 U.S. at 106).

11

discussed, plaintiff has not alleged facts sufficient to support his claims for prospective relief.  As a result, the effect of the declaratory relief he requests is purely retrospective.  Its only use is to resolve the constitutionality of defendants' past conduct, a resolution which in turn is useful only if offered in a state-court proceeding as res judicata on the issue of defendants' liability.  See Green v. Mansour, 474 U.S. 64, 73 (1985).  Issuing a declaratory judgment in these circumstances therefore "would have much the same effect as a full-fledged award of damages or restitution by the federal court".  Id.  As such retrospective awards are prohibited by the Eleventh Amendment, id., the requests for declaratory relief contained in Count 3 and 4 fail to state a valid claim.

C.  <u>Count 5:  Notice Relief</u>

Count 5 of the complaint requests that I declare that the Chief Justice and the Chairman of the Commission violated plaintiff's Fourteenth Amendment right to procedural due process by failing to provide a remedy by which plaintiff could sue Fuyat in his official capacity for soliciting and accepting "loans" from the opposing attorneys in plaintiff's divorce action.  In other words, plaintiff alleges that defendants violated his

12

Fourteenth Amendment rights because they failed to abrogate Fuyat's absolute immunity from civil liability. See, e.g., Hudson v. Palmer, 468 U.S. 517, 533 (1984) (procedural due process satisfied where state provides tort remedy that would have compensated plaintiff after a state official's random and unauthorized acts had deprived plaintiff of his due process rights). To remedy this situation, plaintiff requests that I order defendants to (1) notify him that his proceedings were tainted by the "loans," and (2) notify him of the remedies the judiciary or the Commission will provide by which plaintiff can pursue a claim against Fuyat in his official capacity. For two reasons, I hold that Count 5 fails to state a valid claim for relief.

First, like the declaratory relief requested in Counts 3 and 4, the notice relief which plaintiff requests in Count 5 is barred by the Eleventh Amendment.[7] Count 5 asks me to declare

_____

[7]Plaintiff also misunderstands the nature of "notice relief". A notice order is not an independent form of relief. It is merely a case-management device that is ancillary to a judgment awarding valid prospective relief. Green, 474 U.S. at 71. It does nothing more than inform plaintiffs that "their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue." Id. (quoting Quern v. Jordan, 440 U.S. 332, 349 (1979)).

13

unconstitutional defendants' past failure to notify plaintiff of the illegality of Fuyat's conduct. Plaintiff, however, has not alleged any demonstrable chance that he will be subjected to further illegal conduct. He thus has not alleged that defendants will be required to provide him with future notices similar to the one he now requests. Therefore, like the declaratory relief sought in Counts 3 and 4, the notice relief requested in Count 5 is retrospective. As a result, it is also prohibited by the Eleventh Amendment.[8]

Second, even if the Eleventh Amendment did not preclude the notice relief that plaintiff requests, plaintiff is not entitled this relief because he was provided with an adequate post-deprivation remedy. Although Fuyat's behavior may have tainted the divorce proceedings, plaintiff was subsequently afforded an

---

[8]Even if plaintiff were entitled to the requested notice relief, defendants are not authorized to issue it. R.I. Gen. Laws §8-16-4 permits the Commission to discipline a judge by firing him and taking away the financial and professional benefits of judicial office. See In Re Almeida, 611 A.2d 1375, 1377, 1383 (R.I. 1992) (removal of former judge's pension benefits). However, the statute does not appear to authorize the Commission to strip Fuyat of his absolute immunity from damage claims brought pursuant to 42 U.S.C. §1983, nor could it. Fuyat is entitled to this immunity as a matter of federal common law. See Stump v. Sparkman, 435 U.S. 349, 357 (1978). Neither the Rhode Island legislature nor this court can order its abrogation.

14

opportunity to relitigate the matter.  Plaintiff was therefore afforded a meaningful hearing at a meaningful time.[9]  This post-deprivation remedy is not unconstitutional merely because it did not provide for damages.  As the Supreme Court has stated, "[a]lthough the state remedies may not provide respondent with all the relief which may have been available if he could proceed under §1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."[10]  Parratt v. Taylor, 451 U.S. 527, 544 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986).

 

    D.   Count 6:  The Constitutionality of the Rhode
           Island Statute

    Count 6 is basically an alternative to Count 5.  It requests

---

[9]Plaintiff alleges that in relitigating the divorce action, he relied in part on "tainted" testimony from the proceedings before Fuyat.  Plaintiff, however, does not allege that he was forced to rely on this testimony;  he chose to do so.  Moreover, plaintiff points to no facts indicating why or how the particular testimony was "tainted".  Indeed, Fuyat was suspended before he made a decision in plaintiff's case.

[10]Also, while plaintiff had to go through the time and expense of another proceeding, these additional burdens "do not amount to procedural due process violations."  Decker v. Hillsborough County Attorney's Office, 845 F.2d 17, 22 (1st Cir. 1988); see also, Alton Land Trust v. Town of Alton, 745 F.2d 730, 732 (1st Cir. 1984).

that I declare the Rhode Island statute creating the Commission to be unconstitutional to the extent that it does not authorize the Chief Justice and the Chairman of the Commission to abrogate Fuyat's absolute judicial immunity. See R.I. Gen. Laws §8-16-1 et. seq.

This count can be dealt with summarily. First, plaintiff does not allege the "real and immediate" injury necessary to confer standing. See supra Section II.B. Second, plaintiff admits that he has no right to a particular Family Court practice or procedure. See Rizzo, 423 U.S. at 378 (declining to extend scope of federal equity power to "fashioning of prophylactic procedures for a state agency designed to minimize ... misconduct on the part of a handful of its employees"). Finally, Fuyat has absolute immunity from civil liability under §1983 for actions taken in his judicial capacity. See Stump, 435 U.S. at 355-56, 362-63. Plaintiff cannot abrogate this immunity through the "back door" of a constitutional challenge to the Rhode Island statute.

## III. Conclusion

Even when viewed most liberally, Counts 3 through 6 of

16

plaintiff's complaint fail to state a viable claim for relief.
I therefore grant defendants' motion to dismiss (document no. 3).[11]

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

December 17, 1993

cc:   Peter H. Hurley, Esq.
      John F. Dolan, Esq.
      Raymond F. Burghardt, Esq.

_____

[11]Because I grant defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), I do not address whether the action should be dismissed pursuant to Rule 12(b)(2).

17